**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:26-cv-25085-GAYLES**

**LOUIS VUITTON MALLETIER,**

Plaintiff,

v.

**THE INDIVIDUAL, BUSINESS ENTITY, OR UNINCORPORATED ASSOCIATION d/b/a THE E-COMMERCE STORE IDENTIFIED ON SCHEDULE "A",**

Defendant.
_______________________________________________/

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**

**THIS CAUSE** comes before the Court on Plaintiff, Louis Vuitton Malletier's ("Plaintiff") Motion for Preliminary Injunction (the "Motion"). [ECF No. 7]. The Court has reviewed the Motion and the record and is otherwise fully advised. By the instant Motion, Plaintiff moves for entry of a preliminary injunction against Defendant for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a).

The Court convened a hearing on September 29, 2026, which was only attended by Plaintiff's counsel. During the hearing, Plaintiff directed the Court to evidence supporting the Motion. Defendant has not responded to the Motion, made any filing, or appeared in this matter either individually or through counsel. Because Plaintiff has satisfied the requirements for the issuance of a preliminary injunction, Plaintiff's Motion is granted.

## I. FACTUAL BACKGROUND[1]

1. Plaintiff is the owner of the trademarks identified on Schedule "B" hereto, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Louis Vuitton Marks"). *See* Declaration of Hadrien Huet in Support of Motion for Preliminary Injunction ("Huet Decl."). [ECF No. 7-1 ¶ 4]. The Louis Vuitton Marks are used in connection with the offer to sell and sale of high-quality goods in the categories identified therein. *See id.*

2. Defendant, by operating e-commerce store under the seller name identified on Schedule "A" hereto, has advertised, promoted, offered for sale, or sold goods using what Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the Louis Vuitton Marks. *See* Huet Decl. ¶¶ 9–14; Declaration of T. Raquel Wiborg-Rodriguez in Support of Motion for Preliminary Injunction ("Wiborg-Rodriguez Decl.") [ECF No. 7-3 ¶ 2]; Declaration of Kathleen Burns in Support of Motion for Preliminary Injunction ("Burns Decl.") [ECF No. 7-4 ¶ 4].

3. Plaintiff has submitted sufficient evidence showing Defendant has infringed one or more of the Louis Vuitton Marks. *See* Huet Decl. [ECF No. 7-1 ¶¶ 9–14]; Exhibit 1 thereto [ECF No. 7-2]. Defendant is not now, nor has it ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Louis Vuitton Marks. *See id.* ¶¶ 9, 12, 14.

4. Plaintiff's counsel retained Invisible Inc ("Invisible"), a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Plaintiff's branded products by Defendant and to document the available payment account data for

[1] The factual background is taken from Plaintiff's Amended Complaint [ECF No. 18], Plaintiff's Motion for Preliminary Injunction, [ECF No. 7], and supporting evidentiary submissions.

receipt of funds paid to Defendant for the sale of counterfeit versions of Plaintiff's branded products. *See* Huet Decl. [ECF No. 7-1 ¶ 10]; Wiborg-Rodriguez Decl. [ECF No. 7-3 ¶ 2]; Burns Decl. [ECF No. 7-4 ¶ 3]. Invisible accessed the e-commerce store operating under Defendant's e-commerce store name identified on Schedule "A" hereto (the "E-commerce Store Name"), placed an order from Defendant for the purchase of various products bearing and/or using counterfeits of one or more of the Louis Vuitton Marks, and requested each product be shipped or billed to the Southern District of Florida. *See* Burns Decl. [ECF No. 7-4 ¶ 4] and Composite Exhibit 1 thereto [ECF No. 7-5]. Each order was processed entirely online, and following the submission of the orders, Invisible documented the information for finalizing payment[2] for the Louis Vuitton-branded products ordered from Defendant to its financial account information.[3] *See* Burns Decl. [ECF No. 7-4 ¶ 4] and Composite Exhibit 1 thereto [ECF No. 7-5]. At the conclusion of the process, the detailed web page captures reflecting Plaintiff's Louis Vuitton-branded products offered for sale and ordered via the E-commerce Store Name were sent to Plaintiff's representative for inspection. *See* Burns Decl. [ECF No. 7-4 ¶ 4] and Composite Exhibit 1 thereto [ECF No. 7-5]; Wiborg-Rodriguez Decl. [ECF No. 7-3 ¶ 2]; Huet Decl. [ECF No. 7-1 ¶ 11].

5. Plaintiff's representative reviewed and visually inspected the detailed web page captures reflecting Plaintiff's branded products ordered by Invisible and determined the products were not genuine versions of Plaintiff's goods. *See* Huet Decl. [ECF No. 7-1 ¶¶ 12–14]; Exhibit 1 thereto [ECF No. 7-2].

6. On July 28, 2026, Plaintiff filed its Complaint, [ECF No. 1], and thereafter its Amended Complaint on September 22, 2026, [ECF No. 18], against Defendant for federal

[2] Invisible did not transmit the funds to finalize the sale for most of the orders from Defendant so as to avoid funding Defendant's coffers. *See* Burns Decl. [ECF No. 7-4 ¶ 4, n.1].

[3] The other means of contact for Defendant, including its customer service e-mail address, are included in Schedule "A" annexed hereto. *See* Burns Decl. [ECF No. 7-4 ¶ 4, n.2].

trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement. On July 31, 2026, Plaintiff filed its *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets. [ECF No. 7]. On September 17, 2026, the Court entered a sealed Order Granting *Ex Parte* Temporary Restraining Order, [ECF No. 11], and temporarily restrained Defendant from infringing the Louis Vuitton Marks at issue. The sealed Order Granting *Ex Parte* Temporary Restraining Order also directed PayPal, Inc. ("PayPal") to identify and restrain funds in payment accounts associated with Defendant and to divert those funds to a holding account. Pursuant to the Court's September 17, 2026, Order, Plaintiff properly served Defendant on September 21, 2026 with a copy of the Complaint, copies of the *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, and the Court's September 17, 2026, Temporary Restraining Order. [ECF Nos. 21, 22]. Specifically, Plaintiff provided notice and copies of the September 17, 2026, Temporary Restraining Order and Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets via email to Defendant's corresponding email and/or online contact form, or via the registrar of record for its domain name, and by posting copies of the Temporary Restraining Order and all other pleadings and documents on file in this action on the website located at https://servingnotice.com/Ls0p1g/index.html. Thereafter, Certificates of Service were filed confirming service on Defendant. *Id.* Plaintiff also provided notice and a copy of the Order Rescheduling Preliminary Injunction Hearing to Defendant via email and posting on Plaintiff's serving notice website. A Certificate of Service was also filed confirming service on Defendant. [ECF No. 23]. The Court's September 17, 2026, Temporary Restraining Order gave Defendant five (5) business days to comply with this

Temporary Restraining Order following notice. [ECF No. 11 at 12, ¶ 19]. To date, Defendant has not responded to the Motion, made any filing, or appeared in this matter either individually or through counsel.

## II. LEGAL STANDARD

To obtain a preliminary injunction, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005).

## III. DISCUSSION

The declarations Plaintiff submitted in support of its Motion for Preliminary Injunction support the following conclusions of law: Plaintiff has a strong probability of proving at trial that (1) consumers are likely to be confused by Defendant's advertisement, promotion, sale, offer for sale, and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the Louis Vuitton Marks; (2) the products Defendant is selling and promoting for sale are copies of Plaintiff's products that bear copies of the Louis Vuitton Marks; and (3) the infringement of the Louis Vuitton Marks is likely to cause Plaintiff to suffer immediate and irreparable injury if a preliminary injunction is not granted.

The following specific facts, as set forth in Plaintiff's Amended Complaint, Motion for Preliminary Injunction, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers because it is more likely than not that:

a. Defendant owns or controls an Internet based e-commerce store operating under its seller name which advertises, promotes, offers for sale, and sells products bearing and/or using counterfeit and infringing trademarks in violation of Plaintiff's rights; and

b. There is good cause to believe that more counterfeit and infringing products bearing and/or using Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, or disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products.

The balance of potential harm to Defendant in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products if such relief is not issued.

The public interest favors issuance of the preliminary injunction to protect Plaintiff's trademark interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

Under 15 U.S.C. § 1117(a), Plaintiff may recover, as an equitable remedy, the illegal profits gained through Defendant's distribution and sales of goods bearing and/or using counterfeits and infringements of the Louis Vuitton Mark. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.,* 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")). Requesting equitable relief "invokes the district court's inherent equitable

powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strau*ss & Co., 51 F.3d at 987 (citing *FTC v. United States Oil & Gas Corp*., 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

Considering the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendant has violated federal trademark laws, Plaintiff has good reason to believe Defendant will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

## IV. CONCLUSIONS OF LAW

Accordingly, upon due consideration of Plaintiff's Amended Complaint, Motion for Preliminary Injunction, and supporting evidentiary submissions, it is hereby **ORDERED AND ADJUDGED** that pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, 28 U.S.C. § 1651(a), and the Court's inherent authority, Plaintiff's Motion for Preliminary Injunction, [ECF No. 7], is **GRANTED**, under the terms set forth below:

1. Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order are hereby restrained and enjoined from:

   a. manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using the Louis Vuitton Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

   b. secreting, concealing, destroying, selling off, transferring, or otherwise disposing of:

i. any products, not manufactured or distributed by Plaintiff, bearing and/or using the Louis Vuitton Marks or any confusingly similar trademarks;

ii. any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Louis Vuitton Marks or any confusingly similar trademarks; or

iii. any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by Defendant, including, but not limited to, any assets held by or on behalf of Defendant.

2. Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the Louis Vuitton Marks or any confusingly similar trademarks, on or in connection with all Internet based e-commerce stores owned and operated or controlled by them including the Internet based e-commerce store operating under the E-commerce Store Name;

3. Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the Louis Vuitton Marks or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links

to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to Internet based e-commerce stores registered, owned, or operated by Defendant, including the Internet based e-commerce store operating under the E- commerce Store Name;

4. Defendant shall not transfer ownership of the E-commerce Store Name during the pendency of this action, or until further notice of the Court;

5. Defendant shall continue to preserve copies of all computer files relating to the use of the E-commerce Store Name and shall take all steps necessary to retrieve computer files relating to the use of the E-commerce Store Name that may have been deleted before the entry of this Order;

6. Upon Plaintiff's request, the registrar and/or privacy protection service for the E-commerce Store Name for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information is ordered, to the extent not already done, to disclose to Plaintiff the true identity and contact information of that registrant;

7. Upon receipt of notice of this Order, the Defendant and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, Inc. ("PayPal"), and their related companies and affiliates shall, to the extent not already done:

    a. immediately identify all financial accounts and/or sub-accounts associated with the e-commerce store operating under the E-commerce Store Name identified on Schedule "A" hereto, as well as the financial accounts,

merchant identification numbers, merchant names, and email address identified on Schedule "A", and any other related accounts of the same customer(s);

b. identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order;

c. restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and

d. immediately divert those restrained funds to a holding account for the trust of the Court;

8. Upon receipt of notice of this Order, Defendant and all financial institutions, payment processors, bank, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiff's counsel with all data that details (i) an accounting of the total funds restrained and identify the financial account(s) and sub- account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) that have been restrained. No funds restrained by this Order shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to PayPal, and their related companies and affiliates for

any purpose (other than pursuant to a purchase refund chargeback made by a consumer) without the express authorization of this Court;

9. Defendant or any financial institution account holder subject to this Order may petition the Court at any time to modify the asset restraint set out in this Order;

10. This Order shall apply to the E-commerce Store Name, associated e-commerce store, and financial accounts, and any other e-commerce store names or financial accounts which are being used by Defendant for the purpose of counterfeiting the Louis Vuitton Marks at issue in this action and/or unfairly competing with Plaintiff;

11. Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Fed. R. Civ. P. 65(c), Plaintiff shall maintain its previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendant may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice;

12. Additionally, for the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the e-commerce stores, messaging services, and/or financial institutions, payment processors, banks, escrow services, money transmitters, and marketplace platforms, including but not limited to PayPal, and their related companies and affiliates shall, to the extent not already done, at Plaintiff's request, provide Plaintiff's counsel with any email address(es) known to be associated with Defendant's E-commerce Store Name;

13. This Order shall remain in effect during the pendency of this action, or until further Order of this Court.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of September, 2026.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

**SCHEDULE "A"**
**DEFENDANT'S E-COMMERCE STORE NAME,**
**FINANCIAL ACCOUNT INFORMATION, AND E-MAIL ADDRESS**

| Defendant / E-commerce Store Name | Payee | Financial Account Information | E-mail Address |
|---|---|---|---|
| dealsyity.com | merchant | EMJM4PVQCYGR8 | support@dealsyity.com |
| | merchant | HQAQRPY8A8MHN | |
| | merchant | NKP95BFKP6PUN | |
| | merchant | CPMMUJDJ68XD8 | |
| | merchant | 7RBLQMK6FWPAS | |
| | Truong Thi Phuong Trinh | Z6ECTBCELYQZ4 support@golviera.shop | |

**SCHEDULE "B"**
**PLAINTIFF'S MARKS**

| Trademark | Registration Number | Registration Date | Class(es) / Relevant Goods |
|---|---|---|---|
| | 0,297,594 | September 20, 1932 | IC 018. Trunks, valises, traveling bags, satchels, hat boxes and shoe boxes used for luggage, hand bags, and pocketbooks. |
| LOUIS VUITTON | 1,045,932 | August 10, 1976 | IC 018. Luggage and ladies' handbags. |
| | 1,519,828 | January 10, 1989 | IC 018. Trunks, valises, traveling bags, satchels, hat boxes and shoe boxes used for luggage, hand bags, pocketbooks. |
| | 1,794,905 | September 28, 1993 | IC 016. Stationery, pads of stationery, calendars, indexes for articles made for travellers, notebooks, office requisites in the nature of writing pads, pencil holders, pen cases, pencil cases, nibs, nibs of gold, inkwells.<br><br>IC 025. Clothing for men and women; namely belts, shawls, sashes, scarves; footwear headgear. |
| LOUIS VUITTON | 1,990,760 | August 6, 1996 | IC 014. Watches and straps for wrist watches.<br><br>IC 016. Catalogues featuring luggage and travel accessories, bags, small leather goods, and garments; notebooks, anthologies, and pamphlets referring to travel; calendars; telephone indexes; fountain pens, ballpoint pens, nibs, covers for pocket and desk diaries, and checkbook holders.<br><br>IC 018. Trunks; traveling trunks; suitcases; traveling bags; luggage; garment bags for travel; hat boxes for travel; shoe bags for travel; umbrellas; animal carriers; rucksacks; haversacks; leather or textile shopping bags; beach bags; handbags; vanity cases sold empty; attaché cases; tote bags, travel satchels; clutch bags; briefcases; wallets; pocket wallets; credit card cases; business card cases; bill and card holders; checkbook holders; key |

| | | | |
|---|---|---|---|
| | | | cases; change purses; briefcase-type portfolios.<br><br>IC 024. Travel blankets.<br><br>IC 025. Shirts; sweatshirts; polo shirts; T-shirts; headwear; jackets; ties; belts; shawls; scarves. |
| LOUIS VUITTON PARIS | 2,346,373 | May 2, 2000 | IC 014. jewelry, namely, rings, belt buckles, cufflinks, bracelets, charms, brooches, necklaces, horological * instruments *, watches, cases for watches.<br><br>IC 018. Goods made of leather or of imitations of leather not included in other classes, namely, boxes of leather used for travel purposes, hat boxes for travel; trunks, valises, travelling bags, traveling sets for containing cosmetics, garment bags for travel, rucksacks, handbags, beach bags, shopping bags, shoulder bags, briefcases, pouches; fine leather goods, namely, pocket wallets, purses, key cases, card holders, checkbook holders.<br><br>IC 025. Clothing and underwear, namely, sweaters, shirts, suits, waistcoats, skirts, coats, pullovers, trousers, dresses, clothing jackets, shawls, stoles, scarves, neckties, clothing belts, bathing suits, footwear; head wear and waterproof clothing, namely, raincoats. |
| | 2,361,695 | June 27, 2000 | IC 025. Clothing, namely, sweaters, shirts, sweatshirts, polo shirts, t-shirts, suits, waistcoats, raincoats, skirts, coats, pullovers, trousers, dresses, jackets, shawls, stoles, scarves, neckties, pocket squares, pocket handkerchief squares for wear, gloves, ties, belts, bathing suits, shoes, boots and sandals, and hats. |
| | 4,192,541 | August 21, 2012 | IC 009. Sunglasses; spectacles; accessories for telephones, mobile telephones, smart phones, PC tablets, personal digital assistants, and MP3 players, namely, covers, housings, and neck straps. |

| | | | |
|---|---|---|---|
| | | | IC 014. Jewelry; tie pins; jewelry boxes; watches; watch bands; cases for timepieces.<br><br>IC 016. Printed matter, namely, catalogs, and books in the field of travel, luggage, luxury goods, fashion, clothing, sports, the arts; stationery articles, namely, writing books, drawing books, notebooks, covers for diaries, indexes, and pads; office requisites, namely, pencil holders, pen holders, postcards.<br><br>IC 018. Boxes of leather or imitation leather for packaging and carrying goods; traveling bags; trunks; suitcases; vanity cases sold empty; toiletry bags sold empty; backpacks; handbags; attaché cases; leather document cases; wallets; purses; leather key cases.<br><br>IC 024. Textiles and textile goods, namely, bath linen, towels.<br><br>IC 025. Clothing, namely, shirts, tee-shirts, pullovers, skirts, dresses, trousers, coats, jackets, belts for clothing, scarves, sashes for wear, gloves, neckties, socks, bathing suits; footwear; headwear. |
| LOUIS VUITTON | 4,530,921 | May 13, 2014 | IC 009. sunglasses; accessories for telephones, mobile phones, smart phones, namely, covers, neck straps, neck cords, and bags and cases specially adapted for holding or carrying portable telephones and telephone equipment and accessories.<br><br>IC 016. Paper bags; boxes of cardboard or paper; posters; postcards; catalogs featuring luggage, travel accessories, bags, small leather goods, and clothing; printed publications, namely, books, and magazines featuring luggage, travel accessories, purses, small leather goods, and clothing; photograph albums; stationery, namely, note pads, note books; diaries; office requisites, namely, paper |

| | | | |
|---|---|---|---|
| | | | weights, pencil holders, pen holders, pen cases.<br><br>IC 025. Clothing, namely, pullovers, vests, shirts, tee-shirts, trousers, jackets, suits, coats, rain coats, waterproof jackets, overcoats, parkas, skirts, dresses, pajamas, gloves, neck ties, belts for clothing, leather belts, scarves, pocket squares, sashes for wear, shawls, stoles, bathing suits; headwear; shoes; slippers; boots; half-boots.<br><br>IC 026. Buttons; shoe buckles; hair accessories, namely, barrettes, hair clips, hair bands, hair wraps; hair ornaments; brooches for clothing. |
| | 4,911,047 | March 8, 2016 | IC 018. Handbags, satchels, wallets, pouches of leather, clutch bags.<br><br>IC 025. Clothing accessories, namely, belts, footwear, boots and half-boots. |
| | 5,477,535 | May 29, 2018 | IC 009. Scientific, nautical, surveying, photographic, cinematographic, optical, weighing, measuring, signaling, checking and supervision, life-saving and teaching apparatus and instruments, namely, life vests; apparatus for recording, transmission, reproduction of sound or images, magnetic recording media, namely, blank magnetic data carriers, blank sound recording disks; bags and cases for video cameras or photographic apparatus; blank recordable CD-Rs, blank recordable DVDs and other digital recording media, namely, blank digital storage media; calculating machines, data processing equipment, computers and computer equipment, namely, computer peripherals, computer keyboards, printers for use for computers, mouse pads; computer software for downloading, publishing, showing, displaying, labeling, blogging, and sharing electronic media or information via the Internet or other communications networks in the fields of |

| | | | |
|---|---|---|---|
| | | | travel, luggage, luxury goods, fashion, clothing, sports, sailing, and the arts; blank USB sticks, electronic agendas, game software, recorded computer programs, for downloading, displaying, and sharing electronic media or information via the Internet or other communications networks in the fields of travel, luggage, luxury goods, fashion, clothing, sports, sailing, and the arts; electronic publications, namely, catalogs, books, brochures, pamphlets, and booklets in the fields of travel, luggage, luxury goods, fashion, clothing, sports, sailing, and the arts downloadable online or from the Internet; spectacles, sunglasses; spectacle frames; spectacle lenses, contact lenses; cases for spectacles or for contact lenses; signaling buoys, marker buoys in the nature of positioning buoys; telephones, mobile telephones, smartphones, tablets computers, personal electronic assistants (PDAs) and MP3 players; accessories for telephones, mobile telephones, smartphones, tablet computers, PDAs, and MP3 players, namely, hands-free kits for telephones, batteries, covers and cases, protective covers in the nature of facings; battery chargers, straps and lanyards for use with telephones, mobile telephones, smartphones, tablet computers, PDAs, and MP3 players, earphones; bags and cases specially adapts for holding or carrying mobile telephones and telephone equipment.<br><br>IC 014. Jewelry; fashion jewelry, especially precious or semi-precious stones, pearls, rings, earrings, cuff links, bracelets, charms, brooches, necklaces, pendants, key rings of precious metal, tie pins, medallions, jewelry rolls for travel; jewelry boxes; trophies of precious metal; timepieces, watches, wristwatches, watch straps, alarm clocks, stop watches, clock |

| | | | |
|---|---|---|---|
| | | | and watch making pendulums and cases or presentation cases for timepieces.<br><br>IC 018. Boxes of leather or imitation leather; travel bags, travel sets, namely, leather travel bags, trunks and suitcases, garment travel bags for footwear; unfitted vanity cases; backpacks, handbags; sports bags; evening bags, namely, clutch bags, attaché cases and briefcases of leather; wallets, purses, card wallets, key cases of leather; parasols, umbrellas.<br><br>IC 025. Clothing, namely, pullovers, vests, shirts, tee-shirts, trousers, jackets, suits, coats, raincoats, overcoats, parkas, skirts, dresses; pajamas, house coats, night shirts, dressing gowns; clothing accessories, namely, hats, caps, bonnets, gloves, neckties, belts, leather belts, scarves, pocket squares, shawls, stockings, socks, tights, suspenders, stoles; underwear, lingerie; bathing suits; footwear, slippers, boots and half-boots.<br><br>IC 041. Educational, training, and entertainment services, namely, editing and publishing of catalogs, newspapers, books, magazines and texts other than for advertising in the field of travel, luggage, luxury goods, fashion, clothing, sports, and the arts; sporting activities, namely, arranging and organization of sporting competitions and of sailing contests; sporting and cultural activities, namely, sailing races; organization of sporting competitions and of sailing contests; radio entertainment, television show and film production; publishing of electronic publications, namely, on-line providing of electronic, non-downloadable publications; cultural activities, namely, organization of events for cultural purposes; organization of competitions for education or entertainment purposes, namely, sports competitions; arranging and conducting of educational conferences and congresses; |

| | | | |
|---|---|---|---|
| | | | educational services, namely, arranging and conducting of colloquiums and seminars in the field of travel, luggage, luxury goods, fashion clothing, sports, sailing, and the arts; educational services, namely, conducting educational conferences, congresses, seminars in the field of travel, luggage, luxury goods, fashion clothing, sports, sailing, and the arts; organization of exhibitions for cultural or educational purposes; arranging and conducting of concerts, specifically excluding concerts offered by or in nightclubs; museum services, namely, providing museum facilities presentations and exhibitions; production of fashion shows; entertainment information, information on education, information on education in the field of training; organization of fashion shows for entertainment purposes; photographic reporting; entertainment services in the nature of production and distribution of multimedia entertainment contents, namely, programs and events provided through audio and video for broadcasting on a telecommunications network including computer networks; photography, photographic reporting; publication of books, publication of texts other than advertising texts, electronic publication of books and magazines online, writing of texts other than advertising and publicity texts, publication of books and reviews. |